UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re:

                                    Case No. 8-10-73391-ast

Tuscan Sun Ristorante, Inc.,                Chapter 11

                         Debtor.
-------------------------------------------------------------X

## DECISION AND ORDER ON MOTION TO DISMISS OR CONVERT

Pending before the Court in the above referenced case is the motion (the "Motion") filed by the United States Trustee ( the "UST") seeking dismissal or, in the alternative, conversion to chapter 7, of this chapter 11 case of Debtor, Tuscan Sun Ristorante, Inc., ("Debtor" or "Tuscan"). [dkt item 28][1]  Debtor did not file an objection to the Motion.  This Court conducted a hearing on the Motion on November 3, 2010 (the "Hearing").

By the Motion, the UST seeks dismissal or conversion of this case due to Debtor's post-petition losses and inability to reorganize, and questions Debtor's pre- and post-petition transactions.  Debtor orally requested at the Hearing that the case be dismissed, not converted. For the reasons herein, this Court grants the Motion and will convert this case to a case under chapter 7.

## Procedural History

On May 6, 2010, Debtor filed a voluntary petition (the "Petition") under Chapter 11 of the Bankruptcy Code (the "Petition Date"). [dkt item 1]  Pursuant to Rule 1020(b) of the Federal Rules of Bankruptcy Procedure, in the Petition, Debtor designated itself as a small business debtor, as defined under Section 101(51D) of the Bankruptcy Code, rendering this case a small

---

[1] References to the docket [dkt item –] are to the associated ECF entries for the main case.

Memorandum Opinion- p. 1

business case under Section 101(51C).[2] 11 U.S.C. § 101 (51C),(51D); FED. R. BANKR. P. 1020(b).  Although Debtor did not check any box on the Petition as to its estimated assets, it did check the boxes estimating its liabilities between "$100,001 and $500,000," and owing to between "50 and 99 creditors." [dkt item 1]

On June 9, 2010, this Court conducted a general case status conference in this case, in accordance with Section 105(d) of the Bankruptcy Code. *See* 11 U.S.C. § 105(d).

On June 11, 2010, the UST electronically docketed a statement that it "is unable to appoint a Creditors Committee of Unsecured Creditors pursuant to 11 U.S.C. [§]1102(a)."

This Court conducted additional general case status conferences on August 18, 2010, and October 20, 2010.

## **Factual Background**

Prior to the Petition Date herein, entities to which Debtor is related had filed their own chapter 11 bankruptcy cases.  These cases are Westhampton Coachworks, Ltd. ("Coachworks") and Westhampton Classic Cars d/b/a Manhattan Motorcars of the Hamptons ("Classic Cars"), which have been assigned case numbers 09-73008-ast and 09-73009-ast, respectively.  In addition, Richard Rubio ("Rubio") and Eileen Rubio  (collectively, the "Rubios"), the control persons behind Coachworks and Classic Cars, also filed a joint voluntary petition under chapter 11, which case was assigned case number 09-75163-ast.  Rubio has been described by one or more of this group of debtors as the control person of Tuscan, even though neither of the Rubios

---

[2]  The voluntary petition, which is Official Bankruptcy Form B1 as promulgated by the Administrative Office of the United States Courts and prescribed by the Judicial Conference of the United States, has a section in which chapter 11 debtors must check that either "Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D)" or "Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D)." *See also* FED. R. BANKR. P. 9009.  Here, Debtor checked the "is" box.

is stated to be an owner of Tuscan.[3]   Each of these related debtors is also the subject of motions

to dismiss or convert filed by the UST in their respective cases, which motions will be addressed

by separate decisions and orders.

Prior to the Petition Date, Debtor Tuscan operated an Italian restaurant in the Hamptons

area of Long Island, New York.  The restaurant operated under the name Annona.  Debtor stated

it filed this case in order to resolve landlord-tenant and tax issues.  As of the date of the Hearing,

however, the tax issues remained unresolved, with no resolution in prospect.  Further, Debtor did

not file a Schedule G, the list of executory contracts and unexpired leases, and indicated 'None'

on the cover sheet to the schedules.  Thus, it is unclear what landlord-tenant issues Debtor sought

to resolve.

Subsequent to filing the Petition, based on its filed monthly operating reports ("MORs")

for May through August 2010, relative to its size, Debtor has suffered significant losses in its

business operations and accrued substantial unpaid post-petition tax obligations. [dkt items 21,

22, 23, 27]  Debtor's MORs and statement of administrative taxes through August 2010 reflect

losses from the operations of the restaurant of $164,000.00, overdrafts in the debtor-in-possession

tax account of $15,000.00, and outstanding post-petition accrued and unpaid taxes aggregating

$66,035.56. *Id.*  Debtor advised the Court at the Hearing that Debtor closed the restaurant on

October 31, 2010.

Thus, Debtor has demonstrated both an inability to operate profitably post-petition, and an

inability to confirm a plan of reorganization.

Further, Debtor's MORs reflect that Debtor Tuscan may have engaged in significant loan

---

[3] Debtor's Amended Schedules, filed May 24, 2010, list Barry Rubio and Steven Rubio as the owners of
Debtor. [dkt item 14]

transactions, both pre-petition and post-petition, with the Rubios, Classic Cars, and other related

persons or entities, with outstanding loan balances exceeding $2 million.   Debtor has not sought

or obtained Court approval for any post-petition loan transactions.

## Legal Analysis

*Dismissal or Conversion Under Section 1112*

Here, the parties do not dispute that cause exists to either dismiss or convert this case.

Rather, they disagree over which remedy the Court should order.   Therefore, the Court must

determine whether dismissal or conversion to chapter 7 is in the best interest of the creditors and

the estate.[4]

This Court very recently addressed this precise issue in *In re Jude Thaddeus Partners 1,*

*Inc.*, No. 10-73014, 2010 WL 4496836 (Bankr. E.D.N.Y. 2010).   As noted in *Jude Thaddeus*,

Section 1112(b)(1) of the Bankruptcy Code provides as follows:

> Except as provided in paragraph (2) of this subsection, subsection (c) of this section,
> and section 1104(a)(3), on request of a party in interest, and after notice and a hearing,
> absent unusual circumstances specifically identified by the court that establish that the
> requested conversion or dismissal is not in the best interests of creditors and the
> estate, the court shall convert a case under this chapter to a case under chapter 7 or
> dismiss a case under this chapter, whichever is in the best interests of creditors and
> the estate, if the movant establishes cause.

11 U.S.C. § 1112 (b)(1); *Jude Thaddeus*, No. 10-73014, 2010 WL 4496836 at *7.   To obtain a

voluntary dismissal of this case, Debtor has the burden to establish that dismissal is "in the best

interest of creditors and the estate." *See In re AdBrite Corp.*, 290 B.R. 209, 215 (Bankr. S.D.N.Y.

2003); *see also In re OptInRealBig.com, LLC*, 345 B.R. 277, 282 (Bankr. D. Colo. 2006); *In re*

*Camden Ordnance Mfg. Co. of Ark., Inc.*, 245 B.R. 794 (Bankr. E.D. Pa. 2000); *In re Warner*, 83

---

[4]  Neither Debtor nor the UST asserts that unusual circumstances exist which may be specifically identified
by the Court showing that dismissal or conversion is not in the best interests of creditors and the estate under
§1112(b)(2).

B.R. 807 (Bankr. M.D. Fla. 1988).  Similarly, to obtain conversion, the UST must establish that

conversion is in the best interest of creditors and the estate. *Id.*[5]

The Bankruptcy Code provides a nonexhaustive list of circumstances constituting 'cause'

under this Section 1112(b). *See* 11 U.S.C. § 1112(b)(4);[6] *see also Pal Family Credit Co., Inc. v.

County of Albany et al.*, 425 B.R. 1, 5 (N.D.N.Y.2010); *In re Ameribuild Constr. Mgmt., Inc.* 399

B.R. 129, 132 (Bankr. S.D.N.Y. 2009).  "Because the list of grounds for converting or dismissing

a Chapter 11 case under § 1112(b) is illustrative, not exhaustive, the court may consider other

grounds and use its equitable powers to reach an appropriate result." *AdBrit*e, 290 B.R. at 217

(citing *C-TC 9th Ave. P'ship*, 113 F.3d at 1311).

In seeking conversion, the UST asserts that a trustee can investigate the Debtor's business

---

[5] Courts have not hesitated to convert a chapter 11 case to a chapter 7 case when cause exists. *See, e.g.*, *In re Milford Conn. Assoc., L.P.*, 404 B.R. 699 (2d Cir. 2009) (holding that District Court did not err in granting United States Trustee's motion for conversion to Chapter 7 when the debtor's failure to expeditiously administer the estate established sufficient cause for the conversion); *In re Halpern*, 229 B.R. 67, 73 (E.D.N.Y. 1999) (finding cause established under 11 U.S.C. §1112(b) by debtor's series of motions and bankruptcy filings delaying the sale of properties by which debtor hoped to benefit from speculative increase in equity); *In re Photo Promotion Assoc., Inc.*, 47 B.R. 454 (S.D.N.Y. 1985) (finding cause to convert case to Chapter 7 existed when debtor continued to sustain substantial losses during post-petition period).

[6] (2) The relief provided in paragraph (1) shall not be granted absent unusual circumstances specifically identified by the court that establish that such relief is not in the best interests of creditors and the estate, if the debtor or another party in interest objects and establishes that--

(A) there is a reasonable likelihood that a plan will be confirmed within the time frames established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and

(B) the grounds for granting such relief include an act or omission of the debtor other than under paragraph (4)(A) [(4) For purposes of this subsection, the term 'cause' includes--

(A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation; ]--

(i) for which there exists a reasonable justification for the act or omission; and

(ii) that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(2).

Memorandum Opinion- p. 5

dealings, particularly the inter-company and related entities transactions both pre- and post-petition, and liquidate the estate's assets.  In orally seeking dismissal, Debtor asserts that Debtor's sole asset, the restaurant, has been closed, so no purpose is served by this case being converted to a chapter 7 and remaining in bankruptcy because no assets remain for a chapter 7 trustee to administer.  This Court first notes, however, that it has not overlooked Debtor's failure to file a response to the Motion.

*The Test to Dismiss or Convert*

Courts that have addressed Section 1112 (b) have not developed a bright-line test to determine when conversion or dismissal is in the best interest of creditors and the estate.  As noted in *Jude Thaddeus*, it is an improper construction of Section 1112 to employ the same factors that are used to determine whether cause exists to dismiss or convert a case to also determine whether to choose conversion over dismissal, or dismissal over conversion. *Jude Thaddeus*, No. 10-73014, 2010 WL 4496836 at *8.   Because Congress chose not to differentiate dismissal factors from conversion factors, and because this Court finds that the words of Section 1112(b) are clear, the factors utilized to find cause cannot be the same factors utilized to choose conversion over dismissal, or dismissal over conversion. *Id.*

The issue, then, is what test should be employed to choose between dismissal and conversion.  In *Jude Thaddeus*, this Court employed the ten factors test set out in Collier's treatise on bankruptcy to establish whether dismissal or conversion is in the best interest of creditors and the estate:

1.    Whether some creditors received preferential payments, and whether equality of distribution would be better served by conversion rather than dismissal;
2.    Whether there would be a loss of rights granted in the case if it were dismissed rather than converted;

3.      Whether the debtor would simply file a further case upon dismissal;

4.      The ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors;

5.      Whether conversion or dismissal of the estate would maximize the estate's value as an economic enterprise;

6.      Whether any remaining issues would be better resolved outside the bankruptcy forum;

7.      Whether the estate consists of a "single asset";

8.      Whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests;

9.      Whether a plan has been confirmed and whether any property remains in the estate to be administered; and

10.     Whether the appointment of a trustee is desirable to supervise the estate and address possible environmental and safety concerns.

COLLIER ON BANKRUPTCY ¶ 1112.04[7] at 1112-39-1112-40; *Jude Thaddeus*, No. 10-73014, 2010 WL 4496836 at *9-10; *see also In re Van Eck*, 425 B.R. 54, 67 (Bankr. D.Conn. 2010) (finding the court may appoint a trustee if such appointment is in the best interest of creditors).

As this is a case in which a plan has not been confirmed and will not be confirmed, no sale of assets has been approved, and there are no secured creditors who sought stay relief, this Court will consider the following factors in determining whether to convert or dismiss: the known assets to administer; the impact of dismissal or conversion on creditors; any known available avoidance actions; the position of the United States Trustee; and the Court's interest in protecting the bankruptcy process.

This Court dismissed the *Jude Thaddeus* case based upon the factors outlined above. However, there are significant differences between this case and *Jude Thaddeus*. First, this Debtor lists no secured debts in its schedules and lists over $90,000.00 in personal property assets. This Debtor lists $24,800.00 in priority tax debts, and total unsecured debts of $237,506.62. The *Jude Thaddeus* debtor, by contrast, had one asset which for all purposes appeared to be fully encumbered by a secured creditor's liens, and there were *de minimis* unsecured creditors.

A.      *Assets to Administer*

Creditors of this estate would benefit from the appointment of a chapter 7 trustee to oversee the liquidation and distribution of the assets, and to investigate the related party transactions.[7]

B.      *Impact of Dismissal or Conversion on Creditors*

Debtor scheduled over fifty unsecured creditors with claims exceeding $500,000.00 in its amended Schedule F. [dkt item 1, 14, 15]   This Court entered an order on June 7, 2010, establishing August 7, 2010, as the last day to file a general unsecured proof of claim, and November 8, 2010, as the last day to file governmental claims. [dkt item 28 ]  As of the date of the Hearing, thirty-three creditors had filed general unsecured or unsecured priority claims that totaled approximately $2 million.  Debtor's scheduled unsecured claims are, therefore, substantially less than the filed amounts, the allowability of which a chapter 7 trustee can investigate.

In addition, on May 13, 2010, an adversary proceeding (the "Adversary") was filed against Debtor, in which the plaintiff asserted rights under the Perishable Agricultural Commodities Act of 1930, as amended, 7 U.S.C.§ 499(c)(4) ("PACA").[8]  Debtor filed an answer, and the Court issued a pretrial scheduling order.

C.      *Avoidance Actions*

As noted, a trustee can investigate the inter-company and related entities transactions both

---

[7] This Court is not prepared to conclude on this record that Debtor engaged in misconduct as described under Collier's factor 8.

[8] The court notes that a pretrial conference in the Adversary, number 10-8189-ast captioned *Mantalbano Props. Inc. d/b/a Peter's Frui v. Tuscan Sun Ristorante, Inc. d/b/a Annona*, was held on September 15, 2010, and no party appeared. The Court has issued an Order to Show Cause why the Adversary should not be dismissed, which is scheduled for hearing on January 11, 2011.

pre- and post-petition, and determine if any avoidance actions should be pursued.

>   D.    *Position of the United States Trustee*

As noted in *Jude Thaddeus*, the UST is appointed pursuant to Title 28, Section 581.[9] 28

U.S.C. § 581.  Among the statutory functions of the UST is to maintain and supervise a panel of

trustees eligible to serve in chapter 7 and 11 cases, and to supervise the administration of cases

and trustees in cases under chapters 7, 11, 12, 13, and 15 of title 11. 28 U.S.C. § 586(a).  Many of

the assigned UST functions involve monitoring cases and filing pleadings, or providing

comments on a number of facets of bankruptcy matters.  As such, a certain degree of deference

should be given to the position of the UST.  This Court certainly gives due weight to the UST's

position seeking conversion of  this case.

>   E.    *The Court's Interest in Protecting the Bankruptcy Process*

The Court must balance the competing benefits the bankruptcy process offers to both

debtors and creditors.  Unlike *Jude Thaddeus*, this case is not a two-party dispute involving a

secured creditor. *See In re Mazzacone*, 183 B.R. 402, 418-19 (Bankr. E.D. Pa. 1995).  Debtor

sought protection from its creditors and accepted the benefits of bankruptcy protection.  Now its

creditors, all of which are unsecured, are entitled to the protections afforded by a chapter 7

trustee, and the centralized forum bankruptcy provides to collect and disburse available assets.

*The Court Finds that Conversion Is in the Best Interest of Creditors of the Estate*

This Court finds and concludes that the estate would benefit from the conversion of this

case to chapter 7 and the appointment of a chapter 7 trustee. *Cf. In re Ameribuild Constr. Mgmt.,*

*Inc*. 399 B.R. 129, 133-34 (Bankr. S.D.N.Y. 2009)(finding that the appointment of an

---

[9] The statute applies to United States Trustees appointed in all federal judicial districts except Alabama and North Carolina, which instead have Bankruptcy Administrators. *See* 28 U.S.C. § 581 Note (3); *see also* http://www.uscourts.gov/bankruptcycourts/administrators.html.

independent fiduciary to examine transactions between the debtor and other entities would benefit the creditors of the estate).

### **Conclusion**

Based on the foregoing, this Court concludes that the best interests of creditors and the estate favor conversion of this case to chapter 7.  A separate order hereon shall issue.

<br><br>

**Dated: November 29, 2010**  
        **Central Islip, New York**

                                          **Alan S. Trust**  
                                  **United States Bankruptcy Judge**